**Entered on Docket
October 22, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**



**NOT INTENDED FOR PUBLICATION**

The following constitutes
the order of the court. Signed October 19, 2007

_____
Marilyn Morgan
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re STEPHEN J.R. GOETZ and DIANA GOETZ,<br><br>      Debtors. | Case No. 05-57623-MM<br><br>Chapter 11 |
| JOHN CHALLAS,<br><br>      Plaintiff,<br><br>vs.<br><br>STEVEN GOETZ and Does 1 through 20 inclusive,<br><br>      Defendants. | Adversary No. 06-5197<br><br>**MEMORANDUM DECISION FOLLOWING EVIDENTIARY HEARING** |

## INTRODUCTION

      John Challas alleges that the debtor, Stephen Goetz, slanderously told other people that Challas had admitted to a variety of criminal conduct, including breaking and entering, burglary and theft. Goetz moved to dismiss the complaint asserting that Challas knew or should have known of any claim for slander prior to the confirmation of Goetz's plan of reorganization, and as a result, the claim was discharged when Goetz's plan of reorganization was confirmed. Because the parties' motion papers relied on declarations and other evidence, the court treated the motion as a motion for summary judgment. After two contradictory affidavits created a clear question of fact, the parties agreed to hold

1

an evidentiary hearing solely with respect to the potentially dispositive issue of when the cause of action for slander against Goetz was first within Challas' fair contemplation. Based on the evidence adduced and the arguments of counsel, and for the reasons explained, the court concludes that the cause of action alleged in the adversary complaint was not within Challas' fair contemplation at the time that Goetz's plan of reorganization was confirmed and, therefore, was not discharged.

## **FACTS**

Challas and Goetz are long-time acquaintances as a result of commercial real estate activities in Los Altos, California. Jane Challas, John's wife, is a shareholder of 4920 Corporation ("4920"), a company that owns a building located at 4920 El Camino Real in Los Altos. From time to time, Challas has been an agent for the property. The Goetz family, and later Goetz himself, owned a nearby building located at 4906 El Camino Real. The business connection between Challas and Goetz developed into something of a friendship among the two men and their wives. However, Challas testified that the relationship deteriorated significantly when Challas agreed to serve as a witness against Goetz in a 2001 state court action. In that action, members of the Goetz Family Trust accused Goetz of fraud and other breaches of fiduciary duty arising out of Goetz's purchase of the 4906 building from his father, shortly before his father's death. Challas indicated that the friendship ended in 2002 when Goetz sent Challas an email concerning Challas' use of Goetz's Chevy Suburban. The details surrounding the email were not offered into evidence.

Beginning in 2000, a law firm known as Reynolds, Casas & Riley, LLP became a tenant at 4920, El Camino Real, and Challas hired Goetz's wife, Diana, to decorate the firm's suite. The landlord-tenant relationship, however, was contentious. By May 2003, 4920 had initiated a state court unlawful detainer action to evict RC&R from the premises. A few months later, in August 2003, RC&R filed a separate state court action against 4920 asserting various tort and breach of contract claims ("RC&R action"). The RC&R complaint alleges, in part, that Challas, along with several other defendants, conspired to and did enter RC&R's office suite on June 16, 2002 with a hidden purpose of stealing RC&R's copy of its office lease, altering the copy to reflect higher rates of rent than RC&R had agreed to pay, and destroying the original lease. The complaint further alleges that 4920's unlawful detainer

2

action was premised on the wrongfully altered lease. The allegations regarding Challas and the alteration of the lease are on information and belief. The attorney who drafted the complaint, Samuel Goldstein, testified that before the complaint was filed, Sheila Riley, a principal of RC&R, had advised him that, nearly a year earlier, she had had a conversation with Goetz in which Goetz told her that Challas had bragged to Goetz about entering into the RC&R offices and removing documents. Goldstein noted, however, that Riley had instructed him not to identify Goetz as the source of the information.

Early in the RC&R action, the state court stayed discovery, and 4920 did not serve its first set of interrogatories on RC&R until February 2006. One of those interrogatories asked RC&R to identify all individuals who: a) witnessed the alleged June 16, 2002 trespass into RC&R or the events occurring immediately before or after the incident; b) made a statement at the scene of the alleged trespass into RC&R; c) heard any statements made about the alleged trespass into RC&R by an individual at the scene; and d) may have knowledge of the alleged trespass into RC&R. Although RC&R was aware that Goetz claimed to have heard statements about the incident from Challas, RC&R did not specifically identify Goetz in response to subpart c) of the interrogatory. Instead, RC&R stated that it lacked sufficient information to respond. However, in response to subpart d), RC&R included Goetz and his wife in the middle of a list of approximately sixteen individuals or entities who might have knowledge of the incident.

On June 6, 2006, this court entered an order confirming the Goetz' chapter 11 plan of reorganization. Goetz and his wife had filed a chapter 11 petition eight months earlier, in October 2005, because the fraud and breach of fiduciary duty lawsuit filed by the Goetz Family Trust had resulted in a judgment against Goetz. The Goetz schedules listed Challas as a creditor holding an unsecured claim of $75,000 related to "attorneys' fees."

Six weeks after confirmation, on July 26, 2006, Riley gave her deposition in the RC&R action. Challas was present for her testimony. Riley stated that back on August 22, 2002, she had telephoned Diana Goetz, the decorator for the RC&R office space, because Riley had just received a letter from 4920 indicating the RC&R owed 4920 money for things that the firm never heard about. Diana Goetz asked her husand to come to the phone and, when he did, Goetz told Riley that Challas had bragged to

3

**MEMORANDUM DECISION FOLLOWING EVIDENTIARY HEARING**

Goetz about planning the June 16, 2002 incident at RC&R's office. Goetz told Riley that Challas was an evil man and that Challas had said that while he was in the office, he had copied papers from RC&R's lease file in order to "get" the law firm. Goetz stated that Challas had shown him some of the copies, but Goetz told Riley that he would deny ever speaking with Challas because he and John "had things on each other."

Both Challas and Chris Ashworth, an attorney that initially represented Challas in the both the unlawful detainer and the RC&R actions, testified at trial that they first learned that Goetz was the source of the information behind the trespass allegations in the RC&R action during or after Riley's deposition. Shortly after the Riley deposition, Challas contacted George Eshoo, his counsel in this adversary proceeding, and asked for legal assistance because Goetz was spreading lies about him. In mid-October 2006, Challas filed a state court slander action against Goetz. That complaint was removed to this court and serves as the basis of this adversary proceeding.

To counter Challas' evidence that he did not fairly contemplate a claim against Goetz until he heard Riley's deposition testimony, Goetz offered his own testimony and that of RC&R's state court attorney, Goldstein. Goetz testified that Challas often complained bitterly about RC&R's failure to pay rent and how he wanted to get the firm out of the 4920 building. Then, a few days after June 16, 2002, Goetz was sitting on his patio with his wife when Challas telephoned. When Goetz answered, Challas bragged that he had "solved his problem" with RC&R. Challas told Goetz that he, Challas, had gone into RC&R's office, removed some documents, and solved his problem. Challas denies that this telephone conversation ever took place and denies that he ever removed any documents from RC&R's office suite.

In addition to the filing of the complaint in the RC&R action, Goldstein testified that there were several occasions prior to June 2006 when Challas either knew of or should have fairly contemplated his slander action against Goetz. First, in July 2003, Goldstein deposed Challas as part of 4920's unlawful detainer action. At that deposition, Goldstein asked Challas pointed questions about whether Challas had ever told anyone that Challas had taken documents from RC&R's offices. Within the next few weeks, Goldstein had a conversation with Ashworth where Ashworth specifically asked whether it was Goetz that had said that Challas was talking about the June 16, 2002 incident. Although

4

Goldstein told Ashworth that he could not respond, Goldstein believes the conversation demonstrates that Challas knew that Goetz was the source of the information. Goldstein recalls that he surprised that Ashworth named Goetz because Riley had instructed Goldstein to take care not to reveal Goetz as the source of the information. Goldstein assumed that Ashworth must have learned Goetz's identity directly from Challas.

Goldstein further stated that RC&R's March 2006 answers to 4920's interrogatories should have put Challas on notice that Goetz was the source of the allegations that Challas had taken documents from RC&R. The responses identified Mr. and Mrs. Goetz as individuals who might have knowledge of the June 16, 2002 incident, and their names should have stood out because they were the only individuals identified that were not related to RC&R, 4920 or the local authorities. Then, sometime in June 2006, RC&R responded to additional special interrogatories that 4920 had propounded. Goldstein recalls that those interrogatories referred more explicitly to Goetz as the source of the allegations regarding Challas and the June 16, 2002 incident. The actual responses, however, were not offered into evidence, and it is not known whether those responses were served before confirmation on June 6, 2006.

## DISCUSSION

Under § 1141(d), confirmation of a chapter 11 plan discharges the debtor from any debt or claim that arose before the date of confirmation. The Ninth Circuit uses the "fair contemplation" test to determine when a claim arises. *See In re Cool Fuel, Inc.*, 210 F.3d 999 (9th Cir. 2000)(tax claims); *Corman v. Morgan (In re Morgan)*, 197 B.R. 892 (N.D. Cal. 19960(fraud prevention), *aff'd*, 131 F.3d 147 (9th Cir. 1997); *In re Jensen*, 995 F.2d 925 (9th Cir. 1993)(environmental clean-up under CERCLA). Under this test, the court must consider whether Challas had a fair basis for contemplating that he might have a claim against the debtor prior to the confirmation of the debtor's plan. *Morgan*, 197 B.R. at 899. If yes, the claim is discharged by the confirmation, but if not, the claim is not discharged.

Consistent with the goal of providing debtors with a fresh start, the Bankruptcy Code broadly defines the term "claim" to include any right to payment from the debtor, regardless of whether that right is liquidated, contingent, matured or disputed.. *See* 11 U.S.C. § 101(5). Thus, a claim can arise before actual injury occurs or before all the jurisdictional prerequisites to bringing the claim are satisfied. Nevertheless, in choosing the fair contemplation test, the Ninth Circuit rejected the notion that claims

5

can be discharged before a creditor knows or should know that it has rights against the debtor. *Jensen*, 995 F.2d at 931-32; *In re Conseco Life Insurance Co. Cost of Insur. Litigation*, 2005 WL 2203150, at *8 (N.D. Cal. Apr. 13, 2005). As a result, a claim will not be discharged unless, prior to confirmation, the creditor had real or constructive notice of all the facts needed to reasonably anticipate a potential claim against the debtor.

Here, Challas testified that he had no reason to believe Goetz had slandered him until he heard Riley's deposition testimony in July 2006, about six weeks after Goetz's plan of reorganization was confirmed. To counter this prima facie showing, Goetz must demonstrate that the existence of facts and circumstances from which Challas should have fairly contemplated that he had a potential slander claim against Goetz prior to June 6, 2006.

### I. The Allegations of RC&R's 2003 Complaint Were Insufficient to Make Challas Fairly Contemplate a Slander Action Against Goetz.

Although Challas was named as a defendant in the RC&R action, the allegations that Challas conspired with other individuals to break into the law firm and remove documents were all on "information and belief." Further, the complaint contained no facts establishing the basis of that information and belief. As a result, there was nothing in RC&R's complaint to suggest that Goetz might have been the source of any allegations, much less that he had allegedly slandered Goetz by telling other people that Challas had admitted that he was involved in the break-in. Significantly, Goldstein testified to the contrary. From the outset, he had been specifically instructed to protect Goetz's identity from discovery. Thus, it appears that the complaint was carefully drafted to avoid identifying Goetz. Finally, with discovery stayed, Challas was denied all opportunity to investigate the source of the allegations until the stay was lifted. Under these facts, it cannot be said that the mere existence of RC&R's lawsuit reasonably put Challas on notice of a slander action against Goetz.

### II. The March 2006 Responses to Interrogatories Were Not Sufficient to Cause Challas to Fairly Contemplate a Slander Action Against Goetz.

As noted above, from the beginning of the RC&R action, Goldstein was operating under instructions to avoid revealing Goetz's identity. His effort to comply with his client's instructions is

6

**MEMORANDUM DECISION FOLLOWING EVIDENTIARY HEARING**

evident from his carefully crafted response to 4920's first set of interrogatories. He avoided identifying Goetz as someone who had heard statements from any other person who had been at the scene of the June 16, 2002 incident. Rather, he more ambiguously identified Mr. and Mrs. Goetz, together, as people that might have some knowledge of the June 16, 2002 incident. This response certainly creates no specific impression that Goetz had been spreading slanderous statements about Challas.

Additionally, the court is not persuaded that the inclusion of Mr. and Mrs. Goetz's names should have stood out to Challas and, as a result, put him on notice to inquire further. First, there is no evidence that Challas himself ever saw the discovery responses. After receiving RC&R's complaint, Challas hired attorneys and left the handling of the RC&R action in his attorneys hands. Challas testified that he had no idea what his attorney sent out as discovery, and he has no recollection of any particular conversation with his counsel regarding discovery. Challas does not recall going over RC&R's interrogatory response that identifies Goetz as a person that might have knowledge, and he had no conversations with his attorney regarding any specific person as the perpetrator of the allegations surrounding the June 16, 2002 incident. There is also no reason to believe that including both Mr. and Mrs. Goetz in the interrogatory responses would have stood out to Challas' attorneys. Ashworth testified that he believed he had heard of Goetz because Goetz had some kind of management role related to 4920. This suggests that Ashworth would not have considered the inclusion of the Goetz name as unusual. Further, there is no evidence indicating that Margaret Schneck, who replaced Ashworth as Challas' counsel, would have identified the Goetz name as unusual.

### III. **Goetz's Testimony That Challas Discussed the June 16, 2002 Incident With Goetz Is Not Credible.**

At trial, Goetz asserted for the first time that Challas should have fairly contemplated a potential slander action against Goetz as early as June 2002 when Challas allegedly told Goetz that he had removed and altered documents located in RC&R's office suite. Goetz reasons that once Challas revealed such stunning information, Challas should have fairly contemplated that Goetz would repeat the information to others. Because truth is a defense to slander, the court expects that whether or not Challas actually made admissions to Goetz will be hotly disputed at any trial on the merits of this slander action.

7

**MEMORANDUM DECISION FOLLOWING EVIDENTIARY HEARING**

However, in determining whether the matter can proceed to trial, the court concludes that it is enough that Goetz's credibility regarding the alleged admissions is highly doubtful. Near the time of the June 2002 incident, Goetz was questioned by the local police investigating the incident. The police specifically asked Goetz if Challas had told Goetz that Challas was involved in the break-in, but Goetz denied that any such conversation with Challas had ever taken place. Goetz contends that he lied to the police but now has testified truthfully about his conversation with Challas on the witness stand. The court does not know yet whether Goetz lied to the police or lied in court, but Goetz's willingness to lie to authorities has substantially damaged his credibility. It is also significant that questions regarding Goetz's honesty stretch beyond this adversary proceeding. The precipitating event for the Goetz's chapter 11 case was the entry of a judgment for fraud and breach of fiduciary duty against Goetz in the lawsuit filed by other members of his family. Finally, it is questionable that, in June 2002, Challas would have trusted Goetz enough to make the alleged admissions to him. By that time, the friendship between Goetz and Challas was ending, and Challas had agreed to be a witness against Goetz in the fraud action against Goetz.

In light of all of these factors, the court concludes that evidence offered to date is too doubtful to overcome Challas' denial that the conversation with Goetz ever took place and his affirmative testimony that he first learned of Goetz's slanderous statements in July 2006. As a result, the record does not adequately demonstrate that Challas fairly contemplated the potential for a slander action against Goetz prior to the June 2006 confirmation of Goetz's plan of reorganization. What additional evidence can be offered at a trial on the merits remains to be seen.

## **CONCLUSION**

Based on the foregoing, the court concludes that the cause of action for slander alleged in the adversary complaint was not within Challas' fair contemplation at the time the plan of reorganization was confirmed. As a result, the cause of action was not discharged upon confirmation.

Good cause appearing, IT IS SO ORDERED.

**** END OF ORDER ****

Adv. P. 06-5197

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SERVICE LIST

George P. Eshoo, Esq.
LAW OFFICES OF GEORGE P. ESHOO & ASSOC.
702 Marshall Street, Suite 500
Redwood City, CA 94063

Stanley A. Zlotoff
LAW OFFICES OF STANLEY A. ZLOTOFF
300 South First Street, Suite 215
San Jose, CA 95113

Mark E. Ellis
Wendy D. Vierra
Daniel D. McGee
ELLIS, COLEMAN, POIRER, LAVOIE, & STEINHEIMER LLP
555 University Avenue, Suite 200East
Sacramento, CA 95825

9

**MEMORANDUM DECISION FOLLOWING EVIDENTIARY HEARING**
Case: 06-05197   Doc# 22   Filed: 10/19/07   Entered: 10/22/07 17:02:15   Page 9 of 9